IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DAVID PAICE, SURVIVING SPOUSE OF LATRISHA PAICE, DECEASED PLAINTIFF,<br><br>Plaintiff,<br><br>v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:16-CV-00042-EJF<br><br>Magistrate Judge Evelyn J. Furse |

All parties in this case have consented to having United States Magistrate Judge Evelyn J. Furse conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (*See* 28 U.S.C. § 636 (c); *See also* F.R.C.P. 73; (ECF No. 13). Plaintiff, David Paice, Surviving Spouse of Latrisha Paice ("Ms. Paice"), appeals the Commissioner of Social Security's decision denying her claim for Disability Insurance Benefits under Title II of the Social Security Act ("the Act") (ECF No. 2). Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court REVERSES and REMANDS the Commissioner's decision for further consideration.

## BACKGROUND

Ms. Paice filed an application for Disability and Disability Insurance Benefits on August 27, 2010, alleging disability beginning on December 2, 2005 (*See* Tr. 16). Ms. Paice's claims were initially denied on January 20, 2011, and again upon reconsideration on February

1

24, 2011 (Tr. 126, 127). Thereafter, Ms. Paice timely requested a hearing before an Administrative Law Judge ("ALJ") on February 28, 2011(*See* Tr. 170-171).

A hearing was held on March 19, 2012, in Salt Lake City, Utah before an ALJ (Tr. 39-81). The ALJ issued a decision finding Ms. Paice not disabled on April 2, 2012 (*See* Tr. 130-151). The Appeals Council granted Ms. Paice's request for review and issued an order remanding the case to an administrative law judge on October 31, 2013 (*See* Tr. 152-156). Among other things, the remand order from the Appeals Council stated that upon remand the ALJ will: "[o]btain supplemental evidence from an appropriate medical expert to clarify the nature, severity, and limiting effects of the claimant's medically determinable mental impairments" (Tr. 154-155).

A remand hearing was held on March 3, 2014, in Salt Lake City, Utah, before an ALJ (Tr. 82-125). The ALJ issued a decision again finding Ms. Paice not disabled on April 25, 2014 (*See* Tr. 13-38). Ms. Paice passed away on October 31, 2015 (Tr. 10). On November 27, 2015, Ms. Paice's surviving spouse, David Paice, filed a Notice Regarding Substitution of Party Upon Death of Claimant (Tr. 9). The Appeals Council denied Ms. Paice's request for review on February 19, 2016 (*See* Tr. 1-5). This Appeals Council denial was the final administrative decision of the Commissioner of Social Security in this case. Thus, the ALJ decision stands as the final decision of the Commissioner.

Mr. Paice brought this action to appeal the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides for judicial review of the defendant's final decision.

**A. Factual History**

Ms. Paice was diagnosed with fibromyalgia (Tr. 662, 665, 668, 677). She was also treated for insomnia (Tr. 675). In addition, during an abdominal ultrasound performed in July

2

2009, the doctor observed that Ms. Paice suffered from fatty liver disease (*See* Tr. 757). Additionally, Ms. Paice also had esophagitis, a hiatal hernia, and gastritis (Tr. 761).

In July 2010, Ms. Paice saw a neurologist for pain in her face. Ms. Paice told the neurologist that she experienced pressure, heat, and shock-like feelings in her head and neck (*See* Tr. 623). Ms. Paice also reported that she had pain in her face and experienced tremors in her upper lip and numbness and tingling in her bottom lip and on the left side of her face (*See* Tr. 623). At this time, it was noted she was experiencing difficulty speaking, swallowing, coordination and balance issues, weakness, sensory changes, headaches, and joint pain and stiffness (Tr. 624). She was eventually diagnosed with trigeminal neuralgia (Tr. 870). An MRI of her brain confirmed that she had white matter changes in her brain (Tr. 625, 644-645, 716). In his write up after completing the MRI and other tests, Ms. Paice's doctor hypothesized that the white matter changes were likely related to "chronic ischemic changes," as opposed to demyelinating disease (*See* Tr. 628). Moreover, her doctor believed that Ms. Paice's headaches, and the ineffectiveness of certain painkillers like Topamax and Pamelor to relieve her pain, were a part of chronic pain syndrome (*See* Tr. 628). Ms. Paice's headaches were severe enough that despite her consistent use of pain medication she had to go to her doctor or the emergency room for breakthrough pain (Tr. 637, 670, 706, 805, 852, 904, 906, 1010, 1022). She reported that the headaches caused visual changes (Tr. 842). An MRI of her cervical spine showed some disc bulging (Tr. 642).

Ms. Paice also had cardiac issues (Tr. 646, 649). In February 2010, Ms. Paice complained of chest pain (Tr. 620). An echocardiogram in October 2010 showed impaired relaxation pattern of left ventricle filling and mild mitral valve and tricuspid regurgitation (Tr. 635-636).

With regard to her mental impairments, the record shows that in March 2006, Ms. Paice reported increased personal stress and had severe symptoms of anxiety and panic attacks (Tr. 991). Ms. Paice underwent a consultative psychological exam. She was diagnosed with pain disorder and adjustment disorder with mixed anxiety and depressed mood (Tr. 772). She was taking medication for her anxiety (Tr. 809). She was given a GAF score of 60, indicating moderate impairment (Tr. 772). The Agency physician opined that she would be moderately limited in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (Tr. 797).

In 2012, Ms. Paice's treating physician, Nelson Astle, M.D., filled out a residual functional capacity assessment (*See* Tr. 868). Dr. Astle had treated Ms. Paice since 1996 (Tr. 868). He opined that Ms. Paice could walk for 1 hour without interruption for a total of 4 hours of an 8-hour workday and she could lift no more than 5-10 pounds (*See* Tr. 865). He stated that Ms. Paice would need to rest throughout the day due to fatigue and would miss at least 2-3 days of work each month (Tr. 868). Dr. Astle reiterated in interrogatories that, in his opinion, Ms. Paice had these impairments on or before December 31, 2010 (*See* Tr. 936).

**B. Hearing Testimony**

At the first ALJ hearing, Ms. Paice testified that she was 46 years old (Tr. 42). She stated she could not work due to chronic pain, chronic fatigue, migraine headaches that lasted several days, and brain lesions (Tr. 43). Ms. Paice stated that these impairments caused limitations with concentration, short-term memory, and communication skills (Tr. 43). Ms. Paice stopped working in 2005 due to her impairments (Tr. 51). Ms. Paice stated she would lie down for 1-4 hours a day three-to-five days a week due to her fibromyalgia (Tr. 45). Ms. Paice testified that in

2005 she would get two migraine headaches a month that could last 1-2 days (Tr. 60): these progressively worsened through 2010 (Tr. 60). Ms. Paice took medication for depression and anxiety (Tr. 64-65). Ms. Paice had numbness and tremors in her hands (Tr. 74).

A medical expert, Ronald Houston, Ph.D., testified as to Ms. Paice's mental impairments (Tr. 76). He stated that the mental impairments did not meet a listing, but that her pain disorder would make performing a normal workday difficult (*See* Tr. 76-77). He opined she would be off task 15-25% of the workday (*See* Tr. 77).

At the remand hearing, Ms. Paice testified that she was 48 years old, 5'3" and 175 pounds (Tr. 86). Ms. Paice stated that she drove for limited amounts of time, only when not taking certain medications (Tr. 87). Ms. Paice completed high school, one year of college, and an income tax course (Tr. 87). Ms. Paice testified that she could not work due to fibromyalgia, chronic migraines, trigeminal neuralgia, memory and concentration problems, and brain lesions (Tr. 89). She stated that her medications caused grogginess, fatigue, and memory loss (Tr. 89). She testified she could lift about 10 pounds, sit for about an hour, stand for 20 minutes, and walk about one block (Tr. 90).

Ms. Paice stated her fibromyalgia caused fatigue and sleep disturbances (Tr. 93). Ms. Paice had migraines and tension headaches (Tr. 95-96). Ms. Paice had trigeminal neuralgia that caused muscle spasms in her face (Tr. 98). Ms. Paice had panic attacks that caused difficulty speaking, hyperventilation, and sweating (Tr. 102-103).

### C. ALJ Decisions

The ALJ found that Ms. Paice had the severe impairments of:

> Fibromyalgia, with additional diagnoses of a chronic pain disorder and a pain disorder with both psychological factors and general medical condition; Degenerative disc disease within the cervical region of the spine with more recent findings related to scoliosis

within the thoracic spine and additional changes in the lumbar region; Trigeminal neuralgia; Migraine headaches with imaging confirming multiple hyperintensity lesions; Affective disorder referenced as depression and an adjustment disorder with mixed anxiety and depressed mood; Anxiety disorder; and Insomnia disorder secondary to the fibromyalgia/pain disorder.

(Tr. 19-20). At step 3, the ALJ found that Ms. Paice did not meet a listing (Tr. 21). The ALJ found that Ms. Paice had the residual capacity to perform light work with the following limitations:

> climbing ramps and stairs, kneeling, crouching, crawling, and bending are limited to occasionally while climbing of ladders, ropes or scaffolds is entirely precluded. Further assigned work is limited to simple unskilled repetitive work with no more than minimal change in the task as assigned and requiring no contact with the public and only occasional contact with coworkers and supervisors but with no coworkers situated in close proximity to the assigned work area. Finally, hazards, specifically machinery and unprotected heights, must be avoided in the work area and the level of noise in the work environment must be no more than at the moderate level.

(Tr. 24). The ALJ found that with this residual functional capacity, Ms. Paice could not perform her past relevant work (*See* Tr. 30). However, the ALJ found there was other work available in the national economy that Ms. Paice could perform (Tr. 31). Therefore, the ALJ found that Ms. Paice was not disabled (Tr. 32).

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether her findings are supported by "substantial evidence and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may neither reweigh the evidence, nor substitute its judgment for the Commissioner's. *Id.*

6

In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision. *See Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999). However, the reviewing Court should not "reweigh the evidence nor substitute its [own] judgment" for that of the ALJ. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). Further, the Court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'" *Lax,* 489 F.3d at 1084. Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)(quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)).

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and oral arguments. The Court finds as follows:

## **ANALYSIS**

Ms. Paice raises two issues on appeal: (1) the ALJ erred by failing to properly evaluate the medical opinion evidence; and (2) the ALJ erred in her evaluation of the impact of Ms. Paice's pain on her residual functional capacity assessment.

### I. The ALJ Erred by Failing to Obtain Supplemental Medical Evidence as Directed by the Appeals Council.

Ms. Paice argued in her Opening Brief, that in the remand order, the ALJ was instructed to obtain supplemental medical evidence regarding Ms. Paice's mental impairments (ECF No. 16 at 13-14). The remand order from the Appeals Council stated that upon remand the ALJ will: "[o]btain supplemental evidence from an appropriate medical expert to clarify the nature,

severity, and limiting effects of the claimant's medically determinable mental impairments" (Tr. 154-155). This instruction to obtain supplemental medical evidence was the ALJ's obligation, not Ms. Paice's. When the Appeals Council remands a case to the ALJ, the ALJ is required to take any action ordered by the Appeals Council. *See* 20 C.F.R. § 404.977(b). The instruction was clear that the ALJ was to obtain this evidence. Other portions of the remand order in this case provide direction that the ALJ "may" take. For instance, later in the order it states that "the Administrative Law Judge may request the treating and nontreating source to provide additional evidence" (Tr. 155). However, the wording of the order makes clear that obtaining supplemental evidence to supplement the medical opinion evidence regarding Ms. Paice's mental impairments was not optional.

Counsel for defense argues that additional evidence in the form of interrogatories was obtained prior to the second hearing. However, not only did Ms. Paice obtain and submit this evidence, but the evidence also supported Dr. Houston's opinions, which the ALJ rejected in her decision (*See* Tr. 1077-1078). Moreover, this evidence did not clarify the nature or severity of Ms. Paice's mental impairments. The record makes clear that the ALJ failed to obtain any sort of supplemental evidence regarding Ms. Paice's mental impairments and limitations as directed by the Appeals Council. Such evidence could potentially impact both the ALJ's evaluation of the medical opinion evidence, as well as the evaluation of the Ms. Paice's residual functional capacity. Therefore, this case must be reversed and remanded on the issue of the ALJ's failure to follow the instructions of the Appeals Council and obtain supplemental opinion evidence regarding Ms. Paice's mental impairments.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court REVERSES and REMANDS this case to the Commissioner. On remand, the Commissioner will obtain new evidence regarding Ms. Paice's mental limitations and their impact on her pain and her ability to work.

DATED this 27th day of September 2017.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge